*200 OPINION.
Siefkin:
The respondent determined that the release of the petitioner from liability to pay an amount of $50,000, designated as a lease deposit, resulted in additional income for 1923, and the deficiency in question results from such determination.
The facts, which were stipulated, may be summarized as follows : By the lease of February, 1920, the tenant deposited $50,000 with the landlord as security for the performance of the lease during its term of 21 years. The landlord agreed to return the $50,000 in 1941, paying 4 per cent interest meanwhile, if the tenant performed the conditions of the lease. On January 27, 1923, the landlord sold the property, subject to the lease, to the Coopers, who assigned to the petitioner, which performed the conditions placed by the contract for sale upon the Coopers, the buyers. The agreed purchase price was $950,000, of which $100,000 was to be paid in cash. Instead of paying $100,000, however, the petitioner received credit for the $50,000 deposit, which was retained by the seller. In June, 1923, the petitioner and the lessee, to whom the petitioner now had an obligation to return $50,000 in 1941, executed an agreement by which the lessee released claim to the $50,000 and by which they virtually agreed to cancel the lease, the petitioner bought the lessee’s furniture and the tenant agreed to vacate at a certain time.
It must be this last named agreement that is the basis of the respondent’s conclusion that the petitioner realized income, since it is evident that the only other transaction in which the petitioner was interested could not so result, i. e., the purchase of the property from the owner, subject to the lease. The agreement for purchase carried out by the petitioner called for a cash payment of $100,000, but instead of requiring $100,000 cash, the contract provided for and the *201 petitioner paid only $50,000 cash and the seller retained the $50,000 deposit. At this point, since the petitioner bought the property subject to the lease, it seems clear that the petitioner assumed an obligation to pay the lessee $50,000 in 1941 if all of the terms of the lease had been performed by the lessee during its life. This obligation, it is also apparent, did not stand alone, but was balanced by a corresponding obligation of the lessee. We are not able to say that they did not exactly balance, or, if not, in whose favor the scales were tipped. This being so, when the lessee and the petitioner then agreed to cancel the lease in June, 1923, it can not be said with any certainty whatever that the $50,000 obligation of the petitioner, contingent and uncertain as it was that return need ever be made, did not represent compensation to the petitioner for the loss sustained by it on the cancellation of tire lease. If so, the amount would not'be income to the petitioner.
This conclusion is strengthened when we examine the reasoning back of the various cases holding that cancellation of indebtedness may be income. The cases cited by the respondent are Denholm & McKay Co., 2 B. T. A. 444; G. Butler, 4 B. T. A. 756; The Goerke Co., 1 B. T. A. 860; Wm. C. Huntoon, 14 B. T. A. 459; Planters Operating Co., 12 B. T. A. 844; and Farrelly-Walsh, Inc., 13 B. T. A. 923. The Denholm & McKay case holds that the amount paid by a lessee to a lessor as consideration for the cancellation of a lease is an ordinary and necessary expense to the lessee. G. Butler relates to income realized to a lessor by improvements made by a lessee; The Goerhe Co., holds that the amount received by a lessee for the cancellation of an existing lease is income; Wm. C. Huntoon, so far as we can see, docs not bear upon the question, directly or indirectly, Planters Operating Co. deals with a question of lease value and Farrelly-Walsh, Inc., involves the same question as in The Goerke Co.
Those cases holding cancellation of indebtedness to be income, and article 50 of Regulations 62, likewise, rest upon an assumption that the relation of debtor and creditor exist. The facts in this case indicate to us that such a relation did not exist at the time of the contract of June, 1923. The lessee and the-lessor cancelled the lease, each was relieved of obligations under it, and the contingent obligation to pay $50,000 in 1941 was not the obligation of a debtor in 1923, the cancellation of which constituted income in that year. That being the only issue raised and tried, we conclude that the respondent added the amount to income in error.
Reviewed by the Board.

Judgment of no deficiency will be entered.